**Earnest K. HAUSER, Plaintiff in Error,**

**v.**

**Nona Lee HAUSER, Defendant in Error.**

**No. 42657.**

Supreme Court of Oklahoma.

Sept. 16, 1969.

J. Warren Jackman, of Northcutt, Northcutt & Jackman, Ponca City, for plaintiff in error.

Thomas M. Smith, Roy E. Grantham, Ponca City, for defendant in error.

BERRY, Vice Chief Justice:

August 10, 1966, Earnest K. Hauser filed suit for divorce upon grounds defendant's activities and practices had created a state of incompatibility. The petition alleged marriage of the parties June 14, 1946, birth of two children, one then a minor, execution of a property settlement contract, and fitness of plaintiff in whose custody the children wished to remain. Plaintiff asked for divorce, confirmation of the contract settling property rights, and order fixing custody of the children.

Defendant answered admitting allegations as to marital community and existence of a state of incompatibility, but denied this resulted from fault on her part. Execution of the settlement contract was admitted, but defendant denied same was fairly and voluntarily entered into, or the division made fairly or equitably distributed the parties' property.

The cross-petition alleged use of threatening and abusive language against defendant in private and public, coupled with plaintiff's private and public conduct, humiliated defendant and constituted extreme cruelty, and incompatibility which had existed since January 1, 1965, and had destroyed the legitimate aims of matrimony. Defendant itemized extensive real and personal property, allegedly acquired by joint endeavor, valued at $165,000.00, subject to $30,000.00 indebtedness. The unfair and inequitable property division established by the contract, having been induced by plaintiff's misleading statements and fraudulent acts, should be vacated. Further, the daughter was of age, but best interests of the minor son required his custody be granted defendant. Because in ill health, destitute of means, and living apart from plaintiff, sum of $200.00 per month should be allowed during pendency of action. Defendant asked absolute divorce, custody of the minor child, equitable property division, temporary living expenses and permanent order for child support, temporary attorney fee of $1,000.00 with balance of fee upon conclusion of the action, and cancellation of the settlement contract. August 24, 1966, the trial court granted a temporary order for support and payment of $1,000.00 attorney's fee.

February 3, 1967, the daughter, joined by the minor son who appeared by next

friend, asked leave to intervene in the divorce action, to establish their joint claim to equitable ownership of 80 acres which defendant alleged to be jointly held property. This application was granted and appropriate order of intervention entered. Their intervention petition alleged over many years the parents had appropriated approximately $4,000.00 in cash and services from intervenors, had retained proceeds from sale of livestock owned by intervenors, had employed intervenors in farm labor at a reduced rate of pay, and had withdrawn cash from intervenors' bank account for benefit and use of plaintiff and defendant. The moneys and services received, coupled with desire to insure education for intervenors, were part consideration for gift, and agreement to convey the 80 acres tract then held in trust by the parents. Intervenors prayed adjudication of their equitable ownership, revocation of trust theretofore created by their parents, and conveyance of legal title to intervenors, or to suitable trustees other than the parents. Plaintiff acknowledged intervenors' claim this tract was held in trust, disclaimed and released any claim and asked the court to grant the relief sought. Defendant denied all matters alleged by intervenors except their status as natural children.

The reply generally denied allegations of defendant's answer. In answer to the cross-petition plaintiff denied his alleged misconduct, and charged defendant with irresponsibility, neglect of family and household duties, harassment, and conduct creating disharmony and incompatibility. Plaintiff denied all real property was jointly acquired, 196.5 acres having been purchased with separate funds and held in his own name and in partnership with his father. Remainder of the real estate was jointly acquired, although 80 acres claimed by intervenors had been purchased with their earnings and was held in trust until their majority. Prior to marriage plaintiff operated under a partnership with his father, and had livestock, equipment, etc. valued at $13,264.00 in his own name,

these assets having been utilized by the parties in acquisition of property involved herein. Prior to filing this action defendant left the family and demanded a divorce. Plaintiff agreed to this demand and entered into a fair and equitable settlement contract, considered upon basis of his separately acquired property and extent of these parties' financial obligations. Plaintiff asked divorce, equitable property division with due regard for previously acquired property, property belonging to intervenors and the parties' indebtedness. Plaintiff also asked permanent custody of the children.

For reply to plaintiff's answer to the cross-petition defendant denied all matters other than existing incompatibility, reiterated her former prayer for alimony judgment, same to be a lien upon plaintiff's property, and reasserted prayer for all relief sought in the cross-petition.

The issues involved in the divorce action were tried in three installments. The evidence was severely conflicting. No purpose would be served by reviewing in detail evidence supporting charges and counter-charges of misconduct and laxity in family affairs offered by each party respecting various aspects of family discord. Plaintiff's claims of provocation were supported in many respects by testimony of members of the immediate family (children). However, there was condemnatory evidence sufficiently censurable to support granting of divorce to defendant upon grounds alleged in the cross-petition. Thus matters relating to the divorce decree do not require further mention.

Neither the adult daughter nor the minor son, who intervened by his next friend, appealed from that portion of the decree which denied their claim to 80 acres assertedly held in trust for intervenors. Absent appeal we do not reach consideration either of the trial court's finding no trust was established, or whether the described tract properly was included in calculation of the total assets subjected to property division.

The real property was subjected to independent appraisal by agreement of the parties. Total valuation of $83,100.00 was placed upon real property and improvements, undeveloped oil royalty, and a dwelling in Ponca City. Included in the appraisal was plaintiff's undivided ⅙th interest in 203 acres of land valued at $50,000.00, which was subject to a life estate in plaintiff's mother. At the trial plaintiff offered expert testimony fixing $25,856.50 as value of cattle, farm equipment and machinery. This valuation was uncontroverted, other than defendant's testimony certain items had been omitted. These included a 1962 automobile in defendant's possession, another 1962 automobile driven by and considered as being the children's auto; stock in a farm co-operative, but not subject to disposition except upon owner's death or cessation of farming operations; miscellaneous equipment (garden tractor, lawn mowers, horse trailer, hayloader and welding machine). Other than the co-operative stock there was no testimony as to value of such items, although plaintiff asserts this property was evaluated and included as miscellaneous equipment in appraisal of personal property.

Plaintiff also held approximately 800 acres under agricultural grazing and farming leases, including 160 acres belonging to his mother. However, at time of trial approximately half this acreage had been surrendered, or was not being re-leased because of increased rentals. Evidence of income from all farming operations, including the leased lands, was introduced. The accountants' statements and copies of plaintiff's income tax returns for years 1961–1966 inclusive, showed average yearly adjusted gross income of $3,757.29 over this period.

Evidence in regard to the extent of the parties' indebtedness was conflicting. Plaintiff's evidence disclosed total indebtedness of $40,862.00, including an item of $5,000.00 which plaintiff testified had been borrowed from his mother. Defendant testified the note evidencing this obligation had been destroyed at the mother's request. Plaintiff testified the debt was owing and, if not paid, would be charged against his inheritable interest in his mother's land.

Total valuation of $108,955.00 was established by appraisal of assets. Defendant insists there was no valuation of those assets mentioned above. Defendant also urges gross value of the assets, including unappraised property, is fairly established at $144,408.00, as of January 10, 1966. This argument is based upon evidence offered by defendant, reviewing a series of financial statements given to a lending bank as a basis for loans negotiated by plaintiff. Defendant arrives at this valuation by inclusion of plaintiff's inheritable interest in the mother's land. The trial court evidently considered this an item subject to disposition in the property division since included in property set over to plaintiff in the decree. The defendant's statement showing gross estate listed $27,622.00 outstanding indebtedness.

Evidence in defendant's behalf, although sharply contradicted by testimony of plaintiff and the children, was sufficient to establish performance of all duties of a farm housewife, as well as performance of heavier tasks necessary to carrying on substantial farming and ranching operations. Additionally, there was extensive evidence bearing upon defendant's ill health, surgery, continued medical treatment, and estimated 50% permanent partial disability to the body as a whole.

The trial court rendered judgment granting defendant divorce as prayed. In disposing of other issues the court combined the appraised value of all real and personal property, and based his judgment upon $108,955.00. Upon the premise defendant had worked equally hard to accumulate *all of the property,* the court declared an intention to give her half the property or judgment for alimony. Since defendant could not utilize the land, and because division of the property would cripple plaintiff's operations, the court treated all property as jointly acquired and awarded defendant $54,450.00 as division of property in lieu of alimony.

When called to the court's attention, the city dwelling appraised at $8,000.00, was deducted from total assets, being jointly acquired, the amount of property division then was reduced to $50,450.00. This amount was ordered paid at $500.00 per month, same to constitute a lien upon all plaintiff's property, except the 80 acres claimed by intervenors, plaintiff having testified he intended to deed this to the children. The trial court stated no consideration was given the amount of indebtedness in determining appraised value of jointly acquired property. Although custody of the minor son until majority was placed in plaintiff no mention was made of financial allowance for such continuing obligation. Neither was consideration given to property plaintiff owned before marriage, for the stated reason the property was not paid for at the time of marriage and had been commingled in joint tenancy.

The trial court's remarks when rendering judgment, and again when passing upon motion for new trial, clearly disclose the basis for awarding defendant a "generous half" of the assets. The court stated to divide the land equally would have crippled plaintiff's operations. And, because of defendant's physical debility, when considered in connection with her extreme efforts in helping accumulate their assets, entitled her to be compensated more than an ordinary housewife, which accounted for the court intentionally omitting consideration of the indebtedness. Further, in view of the property awarded plaintiff, if plaintiff had the desire and would go ahead " * * * and take care of the situation, * * *." This statement only can be construed as indicating the trial court's belief plaintiff could recover financially from the division ordered by his own efforts utilized upon the property set over under the decree.

The judgment appealed from cannot be construed as encompassing an alimony award. This appeal basically involves the single issue whether the division of the parties' total assets was an equitable division within meaning and intent of 12 O.S. 1961, § 1278. In view of the record, determination of this issue requires consideration of these ancillary matters: (1) propriety of the trial court's treating the entire assets as jointly acquired property; (2) effect of the court's failure to consider outstanding indebtedness when attempting to decree an equitable division of property.

The evidence shows plaintiff's purchase of 160 acres jointly with his father in 1945, upon return from army service. Plaintiff's portion of the purchase price ($2,000.00) accrued from army allotments received by the mother during plaintiff's forty-two months service, including 18 months overseas. Following the father's death plaintiff traded his interest in this land to his mother for another 80 acres, retaining the 20 acre royalty interest. Prior to marriage plaintiff contracted for purchase of the 116 acre "home place" for $8,000.00, paying $2,000.00 down. Just after marriage plaintiff paid an additional $2,000.00, derived from proceeds of cattle sold by the father-son partnership. Balance of the purchase price came from an insurance company loan of $4,000.00, secured by a mortgage. At the time of trial $6,000.00 was due upon this mortgage, the secured loan representing additional money borrowed for purchase of other land. The "home place" was not separated in appraisal of the entire 476 acres, although plaintiff fixed $23,000.00 as value of the property. The record unequivocally established plaintiff's ownership of this separate property prior to marriage.

In Bouma v. Bouma, Okl., 439 P.2d 198, we restated the principle that alimony is based upon need, whereas property division involves giving to each party an equitable part of jointly acquired property, *without regard for necessity or need of the parties*. And, we noted again that courts may not fix alimony as a penalty, and the same principle requires a husband shall not be penalized by a property division based upon a wife's need. The trial court's statement defendant was entitled to more than half the property due to poor health and lack of ability to carry on alone reflects consideration of factors other than an equitable division based upon each party's rights.

Discussing this distinction in Bouma we said:

"  *   *   * Thus, when attempt is made to provide a divorced spouse with maintenance, based partially upon need, to be accomplished by division of jointly acquired property without fixing alimony, confusion and inequities inevitably result."

This court consistently recognizes and applies the principle that in making equitable division of property consideration must be given to separate property brought into the marital community. In Honeywell v. Honeywell, Okl., 344 P.2d 589, the trial court made equal division of the jointly acquired property. In ascertaining jointly acquired assets the trial court took the appraised value of the property, deducted value of defendant's separate property as of date of the marriage, taxes, and amounts inherited by each. The balance after deductions was treated as joint property. We approved the trial court's distribution as an equitable division.

■■■ Williams v. Williams, Okl., 428 P. 2d 218, involved facts and issues analogous to the present matter. Separate property involved had vested in the husband by inheritance and gift. Because the property had been occupied and improved as homestead after marriage the trial court decreed the homestead to the wife in making property division. Reversing the trial court's decree, we reiterated earlier expressions of stated principles governing division of property under the statute, supra. We pointed out explicitly that equitable division under the statutes *relates solely to jointly acquired property.* When divorce is granted for fault of the husband a wife relinquishes any interest in the husband's separate property, except for alimony or support of minor children. Judicial disposition of the homestead in a divorce does not destroy the quality of the separate estate. The enhanced value of separate property resulting from the parties joint efforts should be adjudicated in final settlement of their affairs, time and manner of acquisition being elements of consideration.

The judgment appealed from is against the clear weight of the evidence and contrary to established principles of law. In such cases this court ordinarily will render, or direct the trial court to render the judgment which should have been entered. This record does not adequately reflect the extent of plaintiff's personal property, or the exact amount invested in separately acquired land prior to marriage. Neither is it possible to determine whether the original mortgage on the "home place" was discharged and, if so, the source of those funds. The evidence does not establish the extent of the parties' outstanding indebtedness with any exactness. The discrepancy between approximately $25,000.00 used in defendant's calculations, and $40,862.00 claimed by plaintiff, makes it impossible to consider the element of indebtedness in attempting equitable division. Neither is the record clear for what reason, nor upon what basis, the trial court decreed plaintiff's prospective inheritance from the mother's property should be considered as an asset to be set over as his separate property. Evidence bearing upon the equities involved is not sufficiently definitive to permit our rendition of the judgment which should have been rendered. Moyers v. Moyers, Okl., 372 P.2d 844; Williams v. Williams, supra.

The judgment is reversed only as to the attempted property division and the cause remanded with directions to proceed in conformity herewith.

IRWIN, C. J., and DAVISON, WILLIAMS, BLACKBIRD, JACKSON, LAVENDER and McINERNEY, JJ., concur.

HODGES, J., concurs in part, dissents in part.